## EUGENE B. BUFFENDEAU *v.* BENJAMIN S. BROOKS AND THOMAS B. VALENTINE.

TIME A BOND TAKES EFFECT.—A bond to indemnify a Sheriff takes effect from the time of its delivery.

BOND TO INDEMNIFY SHERIFF FOR UNLAWFUL ACT.—A bond given to a Sheriff to indemnify him for any loss or damage he may sustain by selling property levied on by him by virtue of an execution in violation of an order enjoining its sale, is void, because an unlawful contract.

UNLAWFUL PURPOSE OF BOND GIVEN TO SHERIFF MAY BE SHOWN.—The fact that a bond was given to a Sheriff to indemnify him against selling property in violation of an order enjoining its sale may be shown, though the bond discloses no unlawful purpose on its face.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

Buffandeau, on the 28th of March, 1859, sued the Sheriff for selling the cattle under the execution, and recovered judgment against him for about four thousand five hundred dollars, damages and costs. The bond of indemnity was then assigned to the appellant, and this action was instituted by him against the respondents.

The plaintiff appealed.

The other facts are stated in the opinion of the Court.

*James C. Carey*, for Appellant.

1st. The Court will sustain this bond if possible, and will not presume that the Sheriff intended a violation of his duty or the law. The fact is, the tendency of the Courts at this day is to reduce rather than increase the grounds that render contracts void on public policy. In *Richardson* v. *Mellish*, 2 Bing. 229, one objection was that the contract was contrary to public policy, and Mr. Chief Justice Best said he was not much disposed to yield to such arguments, and he thought an unquestionable case should be made out before the Court would set aside a contract on that ground. And Mr. Justice Burrough protested against arguing too strongly upon public policy. He said: "It is a very unruly horse, and when once you get astride it, you never know where it will carry you. It may lead you from the sound law."

2d. The bond may be good in part, and bad in part. "The common law," it is said, "doth decide according to common reason, and having made that void that is against law, lets the rest stand. A statute, however, is like a tyrant; where he comes he makes all void. But the common law is like a nursing ·father; it only makes void that part where the fault is, and preserves the rest."

The proofs show that at the time the bond was delivered the Sheriff had notice that the judgment which he was about to enforce by a sale of the cattle under the execution had been discharged by operation of law, and also that an injunction was out against New, the plaintiff, restraining the sale. Now, conceding that the bond was void in so far as it contemplated indemnity to the Sheriff for violating the injunction, still it was good as an indemnity for acting under the execution after notice of the discharge in insolvency. The Sheriff might lawfully demand indemnity for that. (2 Kent, top p. 639, marg. p. 468; *Greenwood* v. *Hammersley*, 5 Taunt. 727; *Doe on Dem. of Thompson* v. *Pitcher*, 6 Taunt. 359.)

*Brooks & Whitney*, for Respondents.

By the Court, SHAFTER, J.

The motion for a nonsuit was properly granted by the Court below. The action was upon a bond given by the defendants to P. E. Edmondson, Sheriff of Alameda County, "to indemnify and save him harmless from all damages, expenses, costs and charges, and against all loss and liability, which he, the said Sheriff, shall sustain or in anywise be put to for or by reason of the retention of said property, the levy, advertisement or delivery thereof, or for any act done under or by virtue of the said execution." The execution referred to issued upon a judgment against Buffandeau in favor of one New; it had been delivered previously to Edmondson for service, and he had, prior to the delivery of the bond, levied upon one hundred and fifty head of cattle as the property of Buffandeau, which is the "property" to the sale of which the indemnity relates. Buffandeau sues as the assignee of Edmondson.

The nonsuit was granted on the ground that the contract was unlawful.

The evidence of the plaintiff tended to prove that the levy was made on the 2d day of June, 1858; that the cattle were advertised for sale on the 17th, but were, in fact, sold on the 28th. That on the 16th Buffandeau instituted an action against New, for the purpose of enjoining him, "his agents, attorneys and servants, and all other persons claiming to act for him, from selling, or exposing for sale, said cattle, under and by virtue of said execution," on an allegation that he, Buffendeau, had been discharged from the judgment named under the Act relating to insolvency. That a temporary injunction was granted, and that Edmondson was duly served with a copy of the complaint and order on the same day. That Edmondson had, prior to the service of the injunction, been notified by Buffendeau's attorney, of his client's discharge in insolvency, and that he immediately after the service, sent the papers to the defendant Brooks, attorney of New. That Brooks told the Sheriff that "the injunction was irregular and he must not register it." That Edmondson,

after he was notified of Buffendeau's discharge and before the service of the injunction order, " told Brooks that he had been notified, and that he would not sell the cattle unless he (Brooks) would indemnify him, and that Brooks promised that he would do so." And that Edmondson, after the service of the injunction order, " told Brooks again that he must indemnify him." The evidence further tended to prove that the bond in suit, though dated on the 16th, was not in fact delivered until the 28th of June, the day of the sale.

The bond took effect from its delivery, and its legality is to be determined by reference to the state of things then existing. Though the undertaking discloses no unlawful purpose on its face, still it is entirely manifest that it was given for the purpose of inducing the Sheriff to violate an existing judicial order. Edmondson knew of the injunction and so did Brooks. Edmondson considered the discharge in insolvency as a reason why he should not sell without indemnity, and made known his views to Brooks on that subject soon after notice of the discharge was given ; and when the injunction was served thereafter, he seems to have regarded it as an additional obstacle in the way of a safe and profitable vendue. Brooks made an effort to convince him that he was mistaken, but finding him not amenable to argument, he and his co-defendant executed the bond and the sale immediately followed.

The character of the bond depends upon the character of the sale ; and the sale was not merely a civil injury to Buffendeau, assuming that the judgment against him had been discharged in insolvency, but it involved a wilful and apparently deliberate disobedience to public authority. Edmondson could not maintain an action on this bond, and his assignee stands in no better position.

The judgment is affirmed.